Thomas Lether, OSB #101708
Eric J. Neal, OSB #110268
LETHER LAW GROUP
1848 Westlake Ave N,
Seattle, WA 98109
T: (206) 467-5444
tlether@letherlaw.com
eneal@letherlaw.com

*Counsel for Plaintiff*
*First Mercury Insurance Company*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| FIRST MERCURY INSURANCE COMPANY, a foreign corporation,<br><br>                    Plaintiff,<br><br>    vs.<br><br>3CD OR, LLC, an Oregon Limited Liability Company; DVKOCR TIGARD, LLC, an Oregon Limited Liability Company; CHRIS HUMPHRIES, an individual; HUTCHISON CONSTRUCTION, INC., an Oregon corporation; ARWAY ENTERPIRSES, INC., DBA KEC ELECTRIC, INC., an Oregon Corporation; KNIFE RIVER CORPORATION NORTHWEST, an Oregon corporation; WESTWIND CONCRETE, INC., an Oregon corporation; PORTER ELECTRIC, INC., an Oregon Corporation, BLUE MOUNTAIN POOLS, INC., an Oregon Corporation,<br><br>                    Defendants. | No.  3:24-cv-00666<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff First Mercury Insurance Company (FMIC) submits the following Complaint for

Declaratory Relief pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57.

COMPLAINT FOR DECLARATORY RELIEF– 1

## I.     PARTIES

1.1.    FMIC is a foreign insurance company organized under the state laws of the State of Delaware with its principle place of business located in the State of New Jersey.

1.2.    Defendant 3CD OR, LLC (3CD) is an Oregon limit liability company. Upon information and belief, all members and managers of 3CD are residents of Oregon.

1.3.    Defendant DVKOCR Tigard, LLC (DVK) is an Oregon limit liability company. Upon information and belief, all members and managers of 3CD are residents of Oregon.

1.4.    Upon information and belief, Defendant Humphries is a resident of Oregon and a member and/or manager of 3CD.

1.5.    Defendant Hutchison Construction, Inc. (HCI) is an Oregon corporation with its principal place of business in Oregon.

1.6.    Defendant Arway Enterprises, Inc., DBA KEC Electric, Inc. (KEC) is an Oregon corporation with its principal place of business in Oregon.

1.7.    Defendant Knife River Corporation Northwest (Knife River) is an Oregon corporation with its principal place of business in Oregon.

1.8.    Defendant Westwind Concrete, Inc. (Westwind) is an Oregon corporation with its principal place of business in Oregon.

1.9.    Defendant Porter Electric, Inc. (Porter) is an Oregon corporation with its principal place of business in Oregon.

1.10.   Defendant Blue Mountain Pools, Inc. (BMP) is an Oregon corporation with its principal place of business in Oregon.

## II.     JURISDICTION AND VENUE

2.1     Jurisdiction is properly before this Court pursuant to 28 U.S.C. §1332, *et. seq*., as

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

complete diversity exists among the parties and the amount in controversy exceeds $75,000.

2.2     The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. §2201 because there is an actual and justiciable controversy between the parties with respect to the existence of insurance coverage under the policies of insurance issued by FMIC. A judicial determination and declaration of the rights and obligations of the parties is necessary and appropriate at this time because FMIC has no adequate remedy at law which will resolve the current controversy.

2.3     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as this action involves a dispute over the application of insurance coverage to an Oregon named insured, events and omissions which gave rise to this claim occurred in this district, and because the Defendants are subject to this Court's personal jurisdiction.

### III.    FACTS

3.1.    FMIC reasserts paragraphs 1.1 through 2.3 and incorporates the same as though fully set forth herein.

### A.    The Subject Loss

3.2.    This claim arises out of the construction of the Hampton Inn & Suites located at 11799 SW 69th Ave in Tigard, Oregon (the "Project").

3.3.    DVK is the Project's owner and Hill Architects, P.C. (Hill) is the Project's architect.

3.4.    Pursuant to a contract dated December 13, 2018 between DVK and 3CD, 3CD agreed to provide all labor, materials, supplies, and supervision as the Project's general contractor. It is alleged that Chris Humphries, Justin Chester, Travis Olson, and Irina Sirotkina were members of 3CD at various points during the pendency of the Project. It is also alleged that

COMPLAINT FOR DECLARATORY RELIEF– 3

Mr. Humphries was one of 3CD's project managers for the Project.

3.5.    FMIC understands that 3CD hired HCI as an excavation subcontractor on the Project. It is alleged that HCI's work on the Project began on or about December 14, 2018. Pursuant to a subsequent subcontract dated April 23, 2019, HCI was to provide site prep, excavation, grading, backfill, and storm sewer system installation work for the Project's construction.

3.6.    On or about February 27, 2019, KEC entered into a subcontract with 3CD for work on the Project. It is alleged that KEC's work began no later than March 1, 2019 and ended on or about November 4, 2021.

3.7.    On or about March 20, 2019, 3CD entered into a subcontract with Westwind for work on the Project. It is alleged that Westwind completed its work on or about September 30, 2021.

3.8.    On or about June 7, 2019, 3CD entered into a subcontract with Knife River for construction of the Project. It is alleged that Knife River's work took place from January 21, 2021 through September 25, 2021.

3.9.    On or about July 17, 2019, 3CD entered into a subcontract with Porter for construction of the project. It is alleged that Porter's work was substantially complete on or about November 14, 2021 and closeout and punch lists were complete on or about January 14, 2022.

3.10.    3CD also entered into a subcontract with BMP for the furnishing and installation of a swimming pool and hot tub spa at the Project. It is alleged that BMP's work was performed between January 20, 2020 through January 10, 2022.

3.11.    Sometime in the course of construction, issues and/or construction defects with the excavation and site work arose and that this work was performed by 3CD, HCI, and other

COMPLAINT FOR DECLARATORY RELIEF– 4

subcontractors. FMIC understands that work on the Project continued after these issues were repaired. FMIC also understands that subsequent issues with the excavation/site work arose.

**B.     The Underlying Lawsuit**

3.12.   On December 17, 2020, HCI initiated the lawsuit entitled, *Hutchison Construction, Inc. v. DVKOCR Tigard, LLC, et al*. Oregon Circuit Court - Washington County Case No. 20-CV-44636 (the "Underlying Lawsuit"). HCI asserts a claim for intentional interference with economic relations against Mr. Humphries, seeking $1.2M in damages. FMIC understands that the claims asserted against 3CD and Mr. Humphries in the lawsuit may involve exposure for the opposing parties' attorney's fees.

3.13.   On February 18, 2021, DVK filed its answer, counterclaims, and third-party claims against 3CD in the Underlying Lawsuit. On November 17, 2021, DVK filed its amended counterclaims and joined counterclaims. Against 3CD, DVK asserted joined counterclaims of breach of contract (failure to bond/release lien); indemnity; and negligence. Regarding its negligence claim, DVK alleges:

> 3CD failed to perform such oversight in a good and workmanlike manner and pursuant to the standard of care in its industry and in the general locale of the Project. As a direct, proximate and foreseeable result of 3CD's negligence, the Project incurred significant delays, and DVKOCR suffered losses and property damage, including but not limited to costs to uncover, repair and complete Hutchison's work, in an amount to be proven at trial. DVKOCR has also incurred losses and damages related to the delays and resulting loss of use of the completed hotel caused by 3CD's negligence.

3.14.   On February 2, 2022, 3CD filed counterclaims against HCI for breach of contract.

3.15.   On August 18, 2022, HCI filed its third amended complaint (TAC). Against 3CD, HCI asserts claims of breach of subcontract and quantum meruit, claiming $1.2 million in amounts unpaid. The TAC asserts claims of intentional interference with economic relations

COMPLAINT FOR DECLARATORY RELIEF– 5

against Mr. Humphries in his personal capacity. Specifically, HCI alleges:

> …Humphries otherwise interfered with the Subcontract and HCI's relationship with 3CD through improper means by, among other things, defaming HCI to 3CD, its other members, and the other contractors on the Project; wrongfully interfering with payment for HCI's Work; to try to intimidate HCI to accept less than was rightfully due under the Subcontract; falsifying Project documents to harm HCI; wrongfully interfering with HCI's ability to perform on the Project—all of which did not serve any legitimate purpose. Humphries acted for an improper purpose to pursue a personal vendetta against HCI and Mr. Hutchison to punish them for challenging his bullying, imperious conduct, abusive behavior, and wrongful acts on the Project.
> …
>
> …Humphries' interference, tortious acts, and personal vendetta against HCI and Mr. Hutchison were also detrimental to 3CD and the other 3CD members. Humphries' tortious conduct interfered with the performance of the Project harming 3CD. Humphries' defamation and misrepresentations to DVKOCR caused payment issues with the Project owner that deprived payments to 3CD or its members.

3.16.    The claims asserted against 3CD and Mr. Humphries in the lawsuit may involve exposure for the opposing parties' attorney's fees.

3.17.    On August 25, 2022, Knife River filed its answer to the TAC and asserted crossclaims for lien foreclosure and breach of contract against 3CD, alleging entitlement to $54,697.61 plus interest of amounts unpaid.

3.18.    On August 29, 2022, KEC filed crossclaims against 3CD for breach of contract and quantum meruit alleging entitlement to $65,755.48 plus interest of amounts unpaid.

3.19.    On September 9, 2022, DVK filed its answer to the TAC and cross claims against 3CD. On March 27, 2023, DVK filed its amended answer to the TAC and cross claims against 3CD for breach of contract (Failure to Bond/Release Lien); breach of contract (deficient Construction); contractual indemnity; and negligence.

COMPLAINT FOR DECLARATORY RELIEF– 6

3.20.    DVK alleges extensive deficient work against 3CD regarding its work on the Project. Many of DVK's enumerated construction defect allegations appear to be for punch list items and construction management/business practices.

3.21.    Furthermore, FMIC understands that the claims asserted against 3CD by DVK in the Underlying Lawsuit involve allegations of unsupported damages against 3CD, including, but not limited to, claims related to the Project's siding, parking garage, roof, and grouting. In this regard, FMIC has not been provided with any documentation or information regarding the cause and scope of the alleged defect, proposed repair or repair costs, or any details or substantive information regarding the alleged claims.

3.22.    Upon notice and receipt of the Underlying Lawsuit, FMIC promptly opened a claim and initiated its claims investigation.

3.23.    FMIC is currently defending 3CD and Mr. Humphries in the Underlying Lawsuit subject to a reservation of rights.

3.24.    Throughout the course of the claims handling process, 3CD and Mr. Humphries have taken the position that prosecution of 3CD's Affirmative Claims and the defense of the Economic Damage Claims are necessary and related to their defense in the Underlying Lawsuit.

**C.    The Consolidated Lawsuits**

3.25.    On February 10, 2022, Westwind filed a suit against 3CD and other parties in a matter entitled, *Westwind Concrete, Inc. v. 3CD OR, LLC, et al.,* Oregon Circuit Court Washington County Case No. 22CV05375 (the "Westwind Lawsuit"). Against 3CD, Westwind asserts claims for breach of lien foreclosure, breach of contract, and quantum meruit. On June 6, 2022, the Westwind Lawsuit was consolidated with the Underlying Lawsuit.

3.26.    On April 5, 2022, Knife River filed suit against 3CD and other parties in a matter

COMPLAINT FOR DECLARATORY RELIEF– 7

entitled, *Knife Rive Corporation Northwest v. DCKOCR, LLC, et al*., Oregon Circuit Court -
Washington County Case No. 22CV11474 (the "Knife River Lawsuit"). Against 3CD, the Knife
River Lawsuit asserts claims of lien foreclosure, breach of contract, and quantum meruit. Knife
River alleges it is owed $594.00 plus interest for its work on the Project. In the Knife River
Lawsuit, on July 27, 2022, BMP asserted cross claims against 3CD for lien foreclosure and
breach of contract. BMP alleges it is owed $87,367.19 plus interest. In June of 2022, the Knife
River Lawsuit was consolidated with the Underlying Lawsuit.

3.27.    On June 30, 2022, Porter filed suit against 3CD and other parties in a matter
entitled, *Porter Electric, Inc. v. 3CD OR LLC, et al.,* Oregon Circuit Court Washington County
Case No. 22CV21871 (the "Porter Lawsuit"). Against 3CD, the Porter Lawsuit asserts claims of
lien foreclosure, breach of contract, and quantum meruit. Porter alleges it is owed $77,383.43
plus interest for its work on the Project. On August 9, 2022, the Porter Lawsuit was consolidated
with the Underlying Lawsuit.

**D.    The Primary Policy**

**1.    Identification of the Primary Policy**

3.28.    FMIC issued a commercial general liability policy no. CA-CGL-0000081311-01
(effective (12/13/18-11/13/21) (the "Primary Policy") to 3CD and other named insureds.

3.29.    The Primary Policy includes a $1 million each occurrence limit of liability, a $1
million personal and advertising limit of liability, a $2 million general aggregate limit of liability,
and a $2 million products-completed operations limit of liability. Pursuant to Form FMIC-GL-
2015 (02/2014), the Primary Policy also includes a $5,000 deductible per occurrence for Bodily
Injury and/or Property Damage Liability Coverage Combined.

3.30.    The Primary Policy includes the following provisions regarding Who Is An

Insured:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.
> …

**SECTION II – WHO IS AN INSURED**

> **1.** If you are designated in the Declarations as:
> …
>
> **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> …

CG 00 01 04 13

**2. Primary Policy Insuring Agreement**

3.31. The Primary Policy includes the following insuring agreement:

> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence";

**(2)** The "bodily injury" or "property damage" occurs during the policy period, or during the Coverage Extension Period as set forth under Paragraph **F.** of this endorsement.

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

COMPLAINT FOR DECLARATORY RELIEF– 10

**(4)**    The "bodily injury" or "property damage" arises out of construction operations performed at the project(s) shown and as described in the **Project Schedule** (hereafter referred to as the Project).

**c.**    "Bodily Injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

CG 00 01 04 13 as modified by FMIC-GL-2580 (03/2018)

**3.**    **Primary Policy Exclusions**

3.32.    The Primary Policy includes the following exclusions:

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
…

**2.**    **Exclusions**

This insurance does not apply to:

COMPLAINT FOR DECLARATORY RELIEF– 11

a.    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)    That the insured would have in the absence of the contract or agreement; or

(2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

...

j.    **Damage To Property**

"Property damage" to:

COMPLAINT FOR DECLARATORY RELIEF– 12

…

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)**     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

**k.**     **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**     **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**m.**     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**     A defect, deficiency, inadequacy or

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

dangerous condition in "your product" or "your work"; or

**(2)**     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

CG 00 01 04 13

### CONSTRUCTION PROJECT ENDORSEMENT PROJECT SPECIFIC - VERSION 1

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

…

**B.**     Under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions** is amended to include the following additional exclusion:

This insurance does not apply to "property damage" to the Project(s) or any part of the Project(s) that occurs during the course of construction. The Project(s) or any part of the Project(s) will be deemed to be within the course of construction until the Project(s) is "completed."

…

**E.**     Under **SECTION V - DEFINITIONS:**

…

**2.**     The following definition is added:

"Completed" means deemed completed as set forth under subparagraph **a. (2)** of Definition **16.** "products-completed operations hazard" (in subparagraph **E. 1.** above).

FMIC-GL-2580(03/2018)

COMPLAINT FOR DECLARATORY RELIEF– 14

3.33.   The Primary Policy includes the following Supplementary Payments Provisions:

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

1.      We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.**      All expenses we incur.

   **b.**      Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.**      The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.**      All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

   **e.**      All court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.**       Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of lime after the offer.

   **g.**      All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

CG 00 01 04 13

**4.      Other Primary Policy Provisions**

3.34.   The Primary Policy includes the following provisions regarding duties of an

insured:

COMPLAINT FOR DECLARATORY RELIEF– 15

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**2.**     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**     How, when and where the "occurrence" or offense took place;

**(2)**     The names and addresses of any injured persons and witnesses; and

**(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

**(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

**(2)**     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**     You and any other involved insured must:

**(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)**     Authorize us to obtain records and other information;

**(3)**     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)**     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

COMPLAINT FOR DECLARATORY RELIEF– 16

    **d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

CG 00 01 04 13

3.35.   The Primary Policy includes the following provisions regarding the limits of liability:

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

…

### SECTION III – LIMITS OF INSURANCE

**1.**    The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.**    Insureds;
    **b.**    Claims made or "suits" brought; or
    **c.**    Persons or organizations making claims or bringing "suits".

**2.**    The General Aggregate Limit is the most we will pay for the sum of:

    **a.**    Medical expenses under Coverage **C;**
    **b.**    Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and
    **c.**    Damages under Coverage **B.**

**3.**    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

…

**5.**    Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

COMPLAINT FOR DECLARATORY RELIEF– 17

**a.** Damages under Coverage **A;** and
**b.** Medical expenses under Coverage **C** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

…

The General Aggregate Limit, the Products-Completed Operations Aggregate Limit and if applicable the Total Policy Aggregate Limit of this Policy shall apply, to the entirety of:

**1.** the "policy period"; and
**2.** if applicable any coverage extension period provided under this Policy.

As used in this endorsement, "policy period" means the policy period shown on the Declarations and includes any extension of such policy period by endorsement.

CG 00 01 04 13 as modified by FMIC-GL-2642(06/2018)

## CONSTRUCTION PROJECT ENDORSEMENT
## PROJECT SPECIFIC - VERSION 1

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The **Project Schedule** referred to throughout this endorsement appears at the end of this endorsement.
…

**F.    Coverage Extension Period**
      …

**2.**    The Limits Of Insurance set forth in the Declarations continue to apply and are not separate or different from, increased with respect to, or reinstated for the Coverage Extension Period referred to in subparagraph **F.1.** above.

FMIC-GL-2580 (03/2018)

3.36.    The Primary Policy includes the following provisions regarding other insurance:

COMPLAINT FOR DECLARATORY RELIEF– 18

      **a.**     **Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. We will not seek contribution from any other insurance available to a Named Insured. With respect to other insureds, and subject to the **Primary And Noncontributory Insurance** provision below, if this insurance is primary our obligations are not affected unless any of the other insurance is also primary. Then we will share with that other insurance by the method described in **c.** below.

…

      **c.**     **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

…

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**a.**    The additional insured is a Named Insured under such other insurance; and

**b.**    You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

CG 00 01 04 13 as modified by FMIC-GL-2580 (03/2018)

    **5.**    **Primary Policy Definitions**

  3.37.   The Primary Policy includes the following definitions:

COMPLAINT FOR DECLARATORY RELIEF– 19

## SECTION V – DEFINITIONS

…

**3.**      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**8.**      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

     **a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

     **b.**      You have failed to fulfill the terms of a contract or agreement;

     if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

…

**13.**      "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

**15.**      "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**      "Products-completed operations hazard":

     **a.**      Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

         **(1)**      Products that are still in your physical possession; or

         **(2)**      Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

COMPLAINT FOR DECLARATORY RELIEF– 20

**(a)** Completion and acceptance of the entire Project(s) by all parties designated in its construction agreement;

**(b)** When all of the work to be done at a location shown in the **Project Schedule** has been completed if the Project(s) calls for work at more than one location;

**(c)** When that part of the work done at the Project(s) has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same Project(s).

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

17. "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. For the purposes of this insurance, electronic data is not tangible property.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

…

COMPLAINT FOR DECLARATORY RELIEF– 21

21.    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;
            **(b)**    Others trading under your name; or
            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

22.    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and
        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

**(2)**    The providing of or failure to provide warnings or instructions.

…

"Completed" means deemed completed as set forth under subparagraph **a. (2)** of Definition **16.** "products-completed operations hazard"….

CG 00 01 04 13 as modified by FMIC-GL-2580 (03/2018)

"Insured contract" means:

**a.**    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.**    A sidetrack agreement;

**c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.**    An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.**    An elevator maintenance agreement;

**f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement..

Paragraph **f.** does not include that part of any contract or agreement:

**(1)**    That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

CG 24 26 0413

**E.    The Excess Policy**

**1.    Identification of the Excess Policy**

3.38.    FMIC an excess liability policy no. CA-EX-0000081313-01 (effective 12/13/18-11/13/21) (the "Excess Policy") to 3CD and other named insureds. The Primary Policy and Excess Policy will hereinafter be collectively referred to as the "Policies."

3.39.    The Excess Policy includes a $10 million each occurrence limit of liability, a $10 million general aggregate limit of liability, and a $10 million products-completed operations aggregate limit of liability.

3.40.    Pursuant to Form Schedule FMIC-UL, the Excess Policy identifies its Primary Controlling Underlying Insurance policy to be the Primary Policy.

3.41.    The Excess Policy includes the following provisions regarding who is an insured:

COMPLAINT FOR DECLARATORY RELIEF– 24

## EXCESS LIABILITY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".

Other words and phrases that appear in quotation marks in this Policy have special meaning. Refer to **SECTION IV - DEFINITIONS.** Other words and phrases that are not defined under this Policy but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".

### SECTION I - COVERAGES

1.      **Insuring Agreement**

…

       **b.**    The insurance under this Policy will follow the same provisions, exclusions, conditions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this Policy. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However, the coverage under this Policy will not be broader than that provided by any "underlying insurance".

FMIC EX 101.0.302 08 18

2.      **Excess Policy Insuring Agreement**

3.42.   The Excess Policy includes the following insuring agreement:

### EXCESS LIABILITY COVERAGE FORM

…

### SECTION I - COVERAGES

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1.     **Insuring Agreement**

    **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which this insurance applies.

        We will have the right and duty to defend the insured against any "suit" seeking damages for such "injury or damage" when the "retained limit" has been paid in full. When we have no duty to defend, we will have the right to defend, or to associate in the defense of, the insured against any "suit" seeking damages for "injury or damage".

        However, we will have no duty to defend the insured against any "suit" seeking damages for which
insurance under this Policy does not apply.

        At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or "suit".

        But:

        **(1)**    The amount we will pay for "ultimate net loss" is limited as described in **SECTION II - LIMITS OF INSURANCE;** and

        **(2)**    Our right and duty to defend ends when we have paid the applicable limit of insurance in the payment of judgments or settlements under this Policy. However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have paid the applicable limit of insurance in the payment of defense expenses, judgments, or settlements under this Policy.

    **b.**    The insurance under this Policy will follow the same provisions, exclusions, conditions and limitations that are contained in the applicable "controlling underlying insurance", unless

COMPLAINT FOR DECLARATORY RELIEF– 26

otherwise directed by this Policy. To the extent such provisions differ or conflict, the provisions of this Policy will apply. However, the coverage under this Policy will not be broader than that provided by any "underlying insurance".

If any applicable "underlying insurance" does not pay for "ultimate net loss" for any reason other than the exhaustion of its applicable limit of insurance by payment of claims or "suits", then this Policy will not cover such "ultimate net loss".

…

**d.** If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "injury or damage" arising out of that exposure unless that limit is specified in the Schedule of Underlying Insurance.

FMIC EX 101.0.302 08 18

**3.** **Other Excess Policy Provisions**

3.43. The Excess Policy includes the following limits of insurance provisions:

**SECTION II - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;
**b.** Claims made or "suits" brought or number of vehicles involved;
**c.** Persons or organizations making claims or bringing "suits"; or
**d.** Limits available under any "underlying insurance".

**2.** The Limits of Insurance as shown in the Policy Declarations or as otherwise modified by an endorsement attached to this policy will apply as follows:

**a.** This insurance only applies in excess of the "retained limit."
**b.** The General Aggregate Limit of Insurance of this policy follows the terms and conditions of the

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

General Aggregate Limit provided by the "controlling underlying insurance" (including any extension period). The Products/Completed Operations Aggregate Limit of Insurance of this policy follows the terms and conditions of the Products/Completed Operations Aggregate Limit provided by the "controlling underlying insurance" (including any extension period).

**c.**    Subject to Paragraph **2.b.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under this policy because of all "injury or damage" arising out of any one "event."

**d.**    If the Limits of Insurance of the "controlling underlying insurance" are reduced by defense expenses by the terms of that policy, any payments for defense expenses we make will reduce our applicable Limits of Insurance in the same manner.

**3.**    The Aggregate Limits of "underlying insurance", where applicable, shall be unimpaired at the attachment date of this Policy, and for the purpose of this insurance, only "events" to which this insurance applies, taking place during the Policy Period of this Policy, shall be considered in determining the extent of any exhaustion of the Aggregate Limits of "underlying insurance", where applicable.

**4.**    If two or more Excess policies issued by us, or by any other affiliated insurance company within the Crum & Forster group of companies, applies to the same incident, "event," act, offense, claim, "suit," or occurrence for which any insured under this Policy is legally liable, then the maximum limit of insurance payable for all "injury or damage" covered under the policies will not exceed the highest applicable Each Occurrence limit of insurance available under any one policy for the incident, "event," act, offense, claim, "suit," or occurrence.

FMIC EX 101.0.302 08 18 as modified by FMIC-EX-2706(05/2017)

3.44.    The Excess Policy includes the following examination of your books and records provisions:

**SECTION III- CONDITIONS**

COMPLAINT FOR DECLARATORY RELIEF– 28

The following conditions apply:

...

**6.** **Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period and up to three years afterward.

FMIC EX 101.0.302 08 18

3.45.   The Excess Policy includes the following loss payable provisions:

**SECTION III- CONDITIONS**

The following conditions apply:

...

**9.** **Loss Payable**

Liability under this Policy does not apply to a given claim unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit", and the obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "underlying insurer" (or a representative of one or more of these) and us.

FMIC EX 101.0.302 08 18

3.46.   The Excess Policy includes the following duties provisions:

**SECTION III- CONDITIONS**

The following conditions apply:

...

**5.** **Duties in the Event of a Claim, Event, or Suit**

**a.**   You must see to it that we are notified as soon as practicable of an "event", regardless of the amount, which may result in a claim under this Policy. To the extent possible, notice should include:

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

      **(1)**    How, when and where the "event" took place;

      **(2)**    The names and addresses of any injured persons and witnesses; and

      **(3)**    The nature and location of any "injury or damage" arising out of the "event".

**b.**    If a claim is made or "suit" is brought against any insured, you must:

      **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other insured involved must:

      **(1)**    Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      **(2)**    Authorize us to obtain records and other information;

      **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      **(4)**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

FMIC EX 101.0.302 08 18

    **4.**    **Excess Policy Definitions**

    3.47.   The Excess Policy includes the following definitions:

      **SECTION IV- DEFINITIONS**

COMPLAINT FOR DECLARATORY RELIEF– 30

As used in this Policy:

1.  **"Controlling underlying insurance"** means a policy of insurance listed in the Schedule of Underlying Insurance and identified as "controlling underlying insurance".

2.  **"Event"** means an occurrence, offense, accident, act, or other event to which the applicable "controlling underlying insurance" applies.

3.  **"Injury or damage"** means any injury or damage covered in the applicable "controlling underlying insurance" arising from an "event".

…

5.  **"Retained limit"** means the sum of all "underlying insurance" shown in the Schedule of Underlying Insurance.

6.  **"Suit"** means a civil proceeding in which damages because of "injury or damage" to which this insurance applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

7.  **"Ultimate net loss"** means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

    a.  Settlements, judgments, binding arbitration; or

    b.  Other binding alternate dispute resolution proceeding entered into with our consent.

    "Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

8.  **"Underlying insurance"** means the policy or policies (including any renewal or replacement of such policies) of insurance listed in the Schedule of Underlying Insurance including the "controlling underlying insurance" and any self-insured retentions.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

> **9.**    **"Underlying insurer"** means any insurer that provides a policy of insurance listed in the Schedule of Underlying Insurance.

FMIC EX 101.0.302 08 18 as modified by FMIC-EX-2655(05/2016)

3.48.    FMIC reserves the right to assert any other language from the Policies that may be potentially applicable to this matter.

3.49.    In accordance with applicable Oregon law, FMIC now brings this claim for Declaratory Judgment seeking a judicial determination that it does not owe any defense or indemnity obligations to the 3CD or Mr. Humphries for some or all of the claims asserted against them in the Underlying Lawsuit.

## IV.    NO COVERAGE IS OWED UNDER THE POLICIES

4.1.    FMIC reasserts paragraphs 1.1 through 3.49 and incorporates the same as though fully set forth herein.

**A.**    <u>**No Coverage Is Owed Under the Primary Policy**</u>

4.2.    Pursuant to the foregoing, where the entity designated on the Declarations is a limited liability company, that limited liability company's members are also insureds, but only with respect to the conduct of that limited liability company's business. That limited liability company's managers are also insureds, but only with respect to their duties as that limited liability company's managers.

4.3.    There is an actual and justiciable controversy as to whether Mr. Humphries qualifies as an insured under the Primary Policy with respect to the claims asserted against him in the Underlying Lawsuit.

4.4.    Pursuant to the foregoing, the Primary Policy provides coverage for "property damage" caused by an "occurrence," as those terms are defined.

COMPLAINT FOR DECLARATORY RELIEF– 32

4.5.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage."

4.6.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" caused by an "occurrence."

4.7.    There is an actual and justiciable controversy as to whether the Primary Policy provides coverage for attorney's fees and costs that may be awarded against 3CD in the Underlying Lawsuit.

4.8.    Pursuant to the foregoing, the Primary Policy provides coverage for certain expenses enumerated above in sub-paragraphs 1.a. through 1.g. of the Supplementary Payments Provisions. Specifically, sub-paragraph 1.e. provides coverage for all court costs taxed against the insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured

4.9.    There is an actual and justiciable controversy as to whether the subject claim involves any amounts owed under the Primary Policy's Supplementary Payments Provisions.

4.10.    Pursuant to the foregoing, the Primary Policy excludes coverage "property damage," as that term is defined, that is expected or intended from the standpoint of the insured.

4.11.    There is an actual and justiciable controversy as to whether any insured expected or intended any of the "property damage" alleged in the Underlying Lawsuit.

4.12.    Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage," as that term is defined, for which the insured is obligated to pay by reason of assumption of liability in a contract or agreement.

4.13.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" which the insured is obligated to pay by

reason of assumption of liability in a contract or agreement.

4.14.    Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage," as that term is defined, to real property on which the insured or its subcontractors were performing operations, if the "property damage" arises from those operations.

4.15.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" to real property on which the insured or its subcontractors were performing operations, and the "property damage" arises from those operations

4.16.    Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage" to that particular part of the property that must be restored or repaired because the "your work" was defectively performed on it, as those terms are defined.

4.17.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" to that particular part of the property that must be restored or repaired because the "your work" was defectively performed on it.

4.18.    Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage" to "your product" arising out of it or any part of it, as those terms are defined.

4.19.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" to "your product" arising out of it or any part of it.

4.20.    Pursuant to the foregoing, the Primary Policy expressly excludes coverage for "property damage" to "your work" and included in the "products completed operations hazard," as those terms are defined.

4.21.    There is an actual and justiciable controversy as to whether the claims asserted in

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

the Underlying Lawsuit involve "property damage" to "your work" and included in the "products completed operations hazard."

4.22.   Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a failure to perform a contract in accordance with its terms, as those terms are defined.

4.23.   There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" to "impaired property" or property that has not been physically injured arising out of a defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work" or a failure to perform a contract in accordance with its terms.

4.24.   Pursuant to the foregoing, the Primary Policy excludes coverage for "property damage" to the Project or any part of the Project that occurs during the course of construction.

4.25.   There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "property damage" to the Project or any part of the Project that occurs during the course of construction.

4.26.   FMIC reserves the right to assert any other exclusions or grounds for which coverage for the claims asserted against the 3CD and Mr. Humphries in the Underling Lawsuit may be excluded under the Primary Policy.

**B.**   **No Coverage Is Owed Under the Excess Policy**

4.27.   Pursuant to the foregoing, the Excess Policy follows the same provisions, exclusions, conditions and limitations that are contained in the Primary Policy.

4.28.   As discussed at length above, there is an actual and justiciable controversy as to

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

whether coverage under the Primary Policy is available for the claims asserted in the Underlying Lawsuit. Similarly, there is an actual and justiciable controversy as to whether coverage under the Excess Policy is available for the claims asserted in the Underlying Lawsuit.

4.29.    Pursuant to the foregoing, the Excess Policy provides coverage for the "ultimate net loss" in excess of the "retained limit" because of "injury or damage," as those terms are defined.

4.30.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve an "ultimate net loss" in excess of the "retained limit."

4.31.    There is an actual and justiciable controversy as to whether the claims asserted in the Underlying Lawsuit involve "injury or damage."

4.32.    There is an actual and justiciable controversy as to whether the Excess Policy provides coverage for attorney's fees and costs that may be awarded against 3CD in the Underlying Lawsuit.

4.33.    FMIC reserves the right to assert any other exclusions or grounds for which coverage for the claims asserted against the 3CD and Mr. Humphries in the Underling Lawsuit may be excluded under the Excess Policy.

## V.    CAUSE OF ACTION FOR DECLARATORY RELIEF

5.1    FMIC reasserts paragraphs 1.1 through 4.33 and incorporates the same as though fully set forth herein.

5.2    Actual and justiciable controversies exist as to whether FMIC owes any defense obligations under the Policies to 3CD and Mr. Humphries under the Policies for the claims asserted in the Underlying Lawsuit.

5.3    Pursuant to and in accordance with 28 U.S.C. § 2201, FMIC asks that the Court

COMPLAINT FOR DECLARATORY RELIEF– 36

grant declaratory judgment in favor of FMIC and enter a judicial determination that FMIC does not have any defense obligations to 3CD and Mr. Humphries for the claims asserted against them in the Underlying Lawsuit.

5.4     Actual and justiciable controversies exist as to whether any FMIC owes any indemnity obligations under the Policies to 3CD and Mr. Humphries under the Policies for the claims asserted in the Underlying Lawsuit.

5.5     Pursuant to and in accordance with 28 U.S.C. § 2201, FMIC asks that the Court grant declaratory judgment in favor of FMIC and enter a judicial determination that FMIC does not have any indemnity obligations to 3CD and Mr. Humphries for the claims asserted against them in the Underlying Lawsuit

## VI.     PRAYER FOR RELIEF

FMIC, having alleged the foregoing, does now hereby pray for relief as follows:

1.     For a declaration that FMIC owes no defense obligation to 3CD or Mr. Humphries for any claims asserted against them, including but not limited to the claims asserted in the Underlying Lawsuit, arising from the subject loss.

2.     For a declaration that FMIC owes no indemnity obligation to 3CD or Mr. Humphries for any claims asserted against them, including but not limited to the claims asserted in the Underlying Lawsuit, arising from the subject loss.

3.     For a declaration that the Underlying Claimants are bound by any judicial declarations in this matter involving the Policies.

4.     For all interest allowed by law.

5.     For attorney fees and costs allowed by statute and law.

6.     For other and further relief as the Court deems just and equitable.

COMPLAINT FOR DECLARATORY RELIEF– 37

DATED this 18th day of April, 2024.

LETHER LAW GROUP

*/s/ Thomas Lether*
Thomas Lether, OSB #101708
*/s/ Eric J. Neal*
Eric J. Neal, OSB #110268
1848 Westlake Ave N., Suite 100
Seattle, WA 98109
P: (206)467-5444 / F: (206)567-5544
tlether@letherlaw.com
eneal@letherlaw.com
*Counsel for Defendant First Mercury*
*Insurance Company*

COMPLAINT FOR DECLARATORY RELIEF– 38